Hostetler *v.* Kniseley, Appellant.

Argued March 25, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*James O. Courtney*, with him *Ernest O. Kooser*, for appellant.

*Budd B. Boose*, for appellees.

OPINION BY MR. CHIEF JUSTICE KEPHART, May 25, 1936:

This appeal presents the usual right-angle collision at a public crossing with motions for judgment n. o. v. and a new trial. The evidence as it relates to the legal questions involved will be reviewed in the course of the opinion.

Under the Act of April 22, 1905, P. L. 286, the court cannot enter judgment n. o. v. where the evidence is conflicting on a material fact, or where any other reason exists precluding a binding direction: *Dalmas v. Kemble*, 215 Pa. 410; *Schwarz v. Glenn*, 244 Pa. 519, 524. The court does not determine questions of fact based

upon disputed evidence; it merely reviews the whole case on the record and does subsequently what it would have been proper to do under a request for a binding direction: *Bond v. P. R. R. Co.,* 218 Pa. 34; *Smith v. Standard Steel Car Co.,* 262 Pa. 550. Appellee must be given the benefit of every fact pertaining to the issues involved which may be reasonably deduced from the evidence: *Kish v. P. R. R.,* 309 Pa. 439, 446; *Conley v. Simmons,* 312 Pa. 249.

Appellant contends the evidence shows the deceased guilty of contributory negligence as a matter of law, and that this is established by incontrovertible physical facts. For this he relies upon the speed of deceased's car and the position of the cars immediately preceding and following the collision, as established by oral evidence. We have frequently held that incontrovertible physical facts are never established by oral evidence as to position, speed, etc., of movable objects: *Hegarty v. Berger,* 304 Pa. 221, 226, and cases cited therein. "The question as to how fast a person walked or how fast an automobile ran is seldom, if ever, susceptible of mathematical proof after the event": *Ferguson v. Charis,* 314 Pa. 164, 171. These are mere inferences or conclusions, based on oral testimony, which it is the province of the jury to pass upon.

We cannot agree that "the logical and only consistent conclusion is that the deceased must have been traveling between 40 and 60 miles per hour" at the time he crossed the intersection. The record fails to bring to light any evidence conclusively rebutting the presumption that deceased exercised due care: *Morin v. Kreidt,* 310 Pa. 90; *Michener v. Lewis,* 314 Pa. 156. There is testimony from which the jury might readily find that the deceased was exercising due care at the time he approached and crossed the intersection. A witness testified the deceased's car was about "the same distance [from the intersection], around three or four rods or so" as the defendant's car, and "maybe 50 feet." The jury could in-

fer from this that the two cars were equally distant from the intersection at a point between 50 and 75 feet away. Considered with appellant's own testimony, supported by that of his wife, that he had slowed down to 12 miles an hour before he proceeded out into the intersection, it follows that the deceased must have been traveling at approximately the same rate of speed as appellant when he approached the crossing. The fact that 1,000 feet from the intersection deceased was traveling 25 or 35 miles per hour does not contradict this inference nor does it show the speed of deceased's car as it approached the intersection. The only positive testimony showing the deceased was traveling at an excessive speed comes from appellant's witnesses. The jury could disregard this adverse testimony in the light of other evidence.

When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left must yield the right of way to the vehicle on the right, unless this right of way is forfeited by traveling at an unlawful speed. See Act of May 1, 1929, P. L. 905, section 1013, as amended by Act of June 22, 1931, P. L. 751, section 2; *Gray v. Ohio Grease Co.,* 283 Pa. 461; *Alperdt v. Paige,* 292 Pa. 1. It was for the jury to determine whether appellee was entitled to the benefit of this rule. A driver having the right of way at an intersection may properly assume that autos approaching on an intersecting street will recognize this fact and act accordingly: *Swift v. Corrado,* 292 Pa. 543; *Galvin v. Kreider,* 293 Pa. 395. Viewing the evidence in the light most favorable to appellee, appellant was clearly negligent in failing to yield the right of way, and since the deceased cannot be said to have been guilty of contributory negligence as a matter of law, the court below committed no error in refusing to grant a judgment n. o. v.

In support of the motion for a new trial, it is urged that the verdict was against the weight of the evidence. The motion was addressed to the sound discretion of the

court below. Our examination of the entire record convinces us the court did not abuse its discretion in refusing to grant a new trial. We do not reverse an order granting or refusing a new trial unless palpable abuse of discretion appears.

Appellant argues the court erred in refusing to charge as follows: "An automobile approaching an intersection in a residential section from the right of another oncoming car, forfeits any right of way that he may have to the intersection, if he is traveling at a speed of more than twenty (20) miles per hour within fifty (50) feet from the intersection, when he does not have a clear and uninterrupted view of such intersection and of the traffic upon all the highways entering such intersection for a distance of two hundred (200) feet of such intersection." This point is based directly on the act of assembly amended June 22, 1931, P. L. 751, section 1013. The trial court agreed that the request was true as an abstract principle of law, but held that it did not apply to this case since the place where the accident occurred was not a residence district within the meaning of the Act of May 1, 1929, P. L. 905, article I, section 102, defining it as follows: "The territory contiguous to a highway, not comprising a business district, when the frontage on such highway for a distance of three hundred (300) feet or more is closely built up with dwellings, or by dwellings and buildings in use for business." The record discloses nothing to indicate that the territory contiguous to the highways intersecting at the point where the collision occurred constituted a residential district within the statutory definition. Appellant's exhibits preclude any such finding. The court should not instruct a jury as to a matter that has no support in the evidence, especially where such instruction merely confuses the issue.

As a final reason for a new trial, appellant alleges misconduct, partiality and prejudice on the part of a trial juror. During a recess in the trial a witness for defendant testified that a juror had stated to him "that she

[plaintiff] won't need to worry, that we are going to take care of her in this case." Had the juror admitted that he had made such statement, or had the trial judge found it as a fact, it would have exhibited a bias and prejudgment rendering necessary a new trial. In *Schankweiler v. Pa. Light Co.*, 275 Pa. 50, a juror approached plaintiff as she left the witness stand, and stated his admiration of her way of doing business, concerning which she had just testified. We held that a new trial should be granted on that account and stated, "That confidence in trial by jury may be preserved and that parties may feel a verdict is based on an honest consideration of the evidence and not on prejudice or sympathy, every appearance of evil must be avoided and every precaution taken to guard against all matters tending in the slightest degree to corrupt or influence the verdict." In *Com. v. Hurd*, 177 Pa. 481, we affirmed an order refusing a new trial on the ground that a juror had exhibited prejudice by a remark made to an outsider during the course of a trial because the juror's statement was not sufficiently proven. But we stated: "Actions of jurors should be jealously scrutinized by courts; care should be taken that a fair and impartial trial by juries should be afforded a defendant and misconduct on the part of jurors showing a prejudgment of the case, or tending to bring scandal on the administration of justice should operate to the granting of a new trial."

Discussions for and against the abolition of trial by jury have been waged since the beginning of this century, and defects have been shown to inhere in the system. So far no plan has been developed to take its place that will meet public approval, and so long as the Constitution provides for a jury as the fact-finding medium, our efforts must be directed to keep this part of our judicial system above reproach. The jury's efficiency and integrity must be maintained on the highest plane if we are to prevent its forced abandonment and the embarking upon an unchartered course of experimentation with

other untried methods. It is the duty of jurors to so act that their conduct will not bring the administration of justice into disrepute and to perform with fidelity their duties as fact finders in accordance with the evidence presented, uncorrupted by external influences, and free of all bias and prejudgment, especially that arising from sympathy.

To this end safeguards must be thrown about jurors in the exercise of their duties so that they may perform them without hindrance from any source. As was stated by Justice BROWN in *Mix v. North American Co.*, 209 Pa. 636, which we sent back for a new trial because of many proven charges of misconduct on the part of jurors: "It has been said that the greatest object of civil government is to get twelve honest men in the jury box. If this be true, after they get there they must be kept hedged around not only with their own integrity but with every precaution against evil communication which may corrupt them; and when they get to their room to deliberate upon an issue on which is involved the life, liberty or property of their fellowmen, their conduct in the discharge of such solemn duty must comport with it, otherwise confidence in the system which is the best achievement of civilization will be lost."

There is much that the jurors should know to preserve the integrity of trial by jury as guaranteed by the Constitution. To those acquainted with our judicial system these principles and the rules to promote it are well known. But jurors, their employment being temporary and their prior acquaintance with the system being but casual, are often unacquainted with the solemnity of their duties and have not a full comprehension of their scope. Wherever and whenever possible, therefore, the judges of the lower courts should fully instruct them as to the measure of their obligations and responsibilities, especially that of speaking to or permitting any one to speak to them about the case on trial, and should point out that not only is the violation of these duties immoral

and dishonest, but that disregard of the court's injunctions will be met with punishment. As stated in *McKahan v. Baltimore & Ohio R. R. Co.*, 223 Pa. 1, when misconduct is disclosed: "On the instant the court should, of its own motion, take notice of the misconduct of the jurors and . . . impose proper punishment upon them. This is due to the orderly administration of justice and the court's own dignity." Judges should thoroughly instruct jurors at the opening of a session of court as to their duties and the punishment if overstepped; and they should again instruct them during each trial on the occasions when they separate. They should unhesitatingly punish disobedience of these admonitions.

Fortunately the accusation in this case was without foundation. The court below found that "nothing was developed or proven to sustain this reason for granting a new trial." This finding of fact precludes any action on our part since it is supported by the evidence.

Judgment affirmed.