## Rex et al. *v.* Lehigh Valley Transit Company, Appellant.

276

Argued April 11, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Edward J. Fox,* of *Fox & Fox,* for appellant.

*Robert von Moschzisker,* with him *Francis Johns Gafford* and *Calvin F. Smith,* for appellees.

OPINION BY MR. JUSTICE SCHAFFER, May 9, 1938:

In this action to recover damages for injuries received by a child two and a half years of age when he was struck and dragged by a trolley car of defendant, the court refused to enter judgment for the latter notwithstanding the verdicts in plaintiffs' favor, which ruling brings to us this appeal by defendant.

The trolley car had reached a terminus. Its operator, who acted both as motorman and conductor, arranged the seats and trolley poles for the return trip, in so doing going around the car. He then mounted the platform, started the car and when it had proceeded some distance found the child was underneath it. The operator testified that when he started the car he did not know the child was in front of it. He said he was exercising care and looking ahead. The child had wandered from the yard of its parents' house, which fronted on the street traversed by the railway. The day was clear and the time about noon.

A witness residing on the opposite side of the street from the home of the child saw, from her front window, the motorman rearranging his car, saw him step up on the platform and as he was about to start, observed the child standing in the track, according to her estimate, from eight inches to a foot in front of the headlight on the enclosed platform. She rushed from the house and endeavored to attract the motorman's attention, but the car started, dragging the child underneath. He was removed and taken to a hospital, where surgical care was given.

The motorman testified that from where he stood and was required to stand on the platform, he did not and could not see the child at the indicated distance in front of the car. Two other motormen, who previous to the time of trial had been employed upon the car in question

and were entirely familiar with it, and who were called in plaintiffs' behalf, said that he could have seen the child if he had looked downward. The testimony of these witnesses was objected to on the ground that it was opinion testimony and not affirmative evidence within the ruling made by the Superior Court when it disposed of the case after the first trial. It is not disputed that the decision of the Superior Court *(Rex v. Lehigh Valley Transit Co.,* 116 Pa. Superior Ct. 603, 177 A. 226) is the law of the case: *Westerfeld v. New York Life Ins. Co.,* 157 Cal. 339, 107 Pac. 699; *Swissvale Borough v. Dickson,* 269 Pa. 19, 21, 112 A. 120; *State H. for C. I. v. Consolidated W. S. Co.,* 267 Pa. 29, 39, 110 A. 281; *Thaler Bros. v. Greisser C. Co.,* 229 Pa. 512, 519, 520, 79 A. 147. In its opinion the Superior Court says (p. 608): "In order to justify a recovery for the plaintiffs, we think it was, at least, the duty of the plaintiffs to produce a witness, or witnesses, who, after an examination of the physical facts relative to the car and the position of a child of that size, standing by the headlight, could affirmatively testify that a man of the size of defendant's motorman could have seen the child if he had looked out of the window in front of him. If a witness could be produced who would so testify, the question of defendant's negligence would be for the jury; if no such witness could be produced, the defendant would be entitled to binding instructions." In our opinion the testimony of the two motormen called by plaintiffs met this test and met the requirements of the decision. When account is taken of the familiarity of the witnesses with the car, we think it was competent for them to express an opinion.

The main controversy centers about the inquiry whether the motorman in charge of the car could have seen the child before starting, using the full range of his vision. As before stated, he said he could not. To buttress this statement and to bring into play the incontrovertible physical fact rule *(Lessig v. Reading Transit &*

*Light Co.,* 270 Pa. 299, 113 A. 381; *Snyder v. Penn Liberty Refining Co.,* 302 Pa. 320, 153 A. 549; *Reilly v. Phila.,* 328 Pa. 563, 195 A. 897) defendant called a civil engineer, by whom it was offered to be shown that in his opinion, deduced from actual measurements and mathematical calculations, the motorman standing erect at his post, his eyes 24½ inches from the glass in the window of the platform, could not see the child, who both sides admit was 38 inches high. The court refused the offer. For at least two reasons we think the incontrovertible physical fact rule cannot be introduced into this controversy. It does not apply where there are variables or doubtful estimates or where objects are not placed with certainty: *Hostetler v. Kniseley,* 322 Pa. 248, 185 A. 300. Here there are two possible variables, the distance of the child from the front of the car, as estimated by the woman who saw the child, and the motorman's range of vision. The best that can be said for the woman's statement as to the distance of the child from the car is that it was an estimate. She said it was "about" 8 inches or a foot from the headlight. She was looking at the situation from an angle; the distance may have been more and it would only have had to be but a little more, even under the testimony of defendant's engineer. He said, if the child had been 28 inches from the car, he could have been seen by the motorman standing erect had he looked down. In addition, allowance would have to be made for the width of the child's body and head. In the woman's one-foot estimate, we are dealing with the space between the child and the car and taking no account of its head or body, which would have occupied further inches. In addition, the headlight extended out from the platform 4 inches and the bumper 8 inches. Nor do we think the location of the motorman's eyes from an erect position is a fixed point from which the calculation here attempted can be incontrovertibly made. If, instead of standing erect, he had leaned forward and brought his eyes closer to the glass he would

have increased his ability to see the space closer to the car. It was testified that in operating a car the motorman does lean forward. One of plaintiffs' motormen witnesses said he had actually made the test to ascertain the distance he could see in front of the car, standing erect, and said he could see almost to the bumper. As the incontrovertible physical fact rule cannot be applied to the situation which the testimony developed, the court was not in error in ruling out the hypothetical question addressed to the engineer, which had its basis in the rule, or the diagram which he had prepared illustrating its application. It is to be noted, however, the engineer was ultimately permitted to testify that in his opinion the motorman, standing erect with his eyes 24½ inches from the glass, could not have seen the child, and, as before stated, that he could have seen him if 28 inches away from the front of the car.

Appellant challenges the verdict of $15,000 for the child as excessive. While it is high, it is not so high as to be shocking or manifestly unjust. The boy has left only a stump of a foot. He will have to limp through life, which is a physical disability that under certain circumstances might seriously affect his ability to obtain employment. Whether he will be able to do work that requires him to stand is a problem. His foot was so crushed and mangled that after the first operation he was required to have a second one, in which the foot was cut off half way back from the toes to the ankle. He will have to have another operation. He has had to have skin grafting and his foot breaks open on occasions when subjected to undue pressure, owing to the flesh being so near the bone. This compels him at times to go on crutches. He has to wear a steel contrivance in his shoe to enable him to walk. Walking causes the skin over the bones of the foot to break and, when this occurs, it takes from two to three weeks to heal. A few months before this second trial, which occurred almost eight years after the accident, the foot was in a serious condi-

tion because the bone had become infected. In addition to all this, he had two fractures of the skull. The doctors testified that whether these would hereafter affect him was problematical. We are not prepared to say that the action of the trial judge and the court in banc in refusing to lower the verdict was improper.

Judgments affirmed.