## Novakoski v. Pitkcavage

*Louis Cohen,* for plaintiff.
*Samuel Gubin,* for defendant.

PER CURIAM, October 30, 1950.—Plaintiff, Elizabeth P. Novakoski, instituted this action in trespass against defendant, William Pitkcavage, for damages for personal injuries alleged to have been sustained by her by reason of the alleged negligent operation of an ambulance driven by defendant. The case was reached for trial before Hon. William I. Troutman and a jury on Monday, June 12, 1950, and proceeded until Tuesday afternoon, June 13, 1950, when the jury returned a verdict in favor of plaintiff and against defendant in the sum of $10,000.

On June 15, 1950, counsel for defendant filed a motion for a new trial and assigned the stereotyped reasons and requested the court to have the testimony transcribed and permit attorney for defendant to file

additional reasons within 30 days after the notes of testimony were transcribed and filed.

On June 17, 1950, counsel for defendant filed additional reasons averring the misconduct of William J. Dooley, one of the jurors empaneled in the case and foreman of the jury. The additional reasons in support of the motion for a new trial were verified by defendant and were supported by the affidavits of Joseph Murin, William Pitkcavage and John Ponatoski in respect to the juror's alleged misconduct.

On June 19, 1950, the court directed that the additional reasons be filed and further ordered that testimony be taken on the additional reasons in support of the motion for a new trial on Monday, July 3, 1950, and on that date, the testimony of defendant, one of the two affiants and the juror was taken before the court en banc.

John Ponatoski testified that he, together with William Pitkcavage and Joseph Murin, drove to Sunbury on the morning of Tuesday, June 13, 1950, and arrived in front of the courthouse at 9:40 a.m.; that they got out of the car and stood at the curb for a period of several minutes when a man came up to them and said: "Is this the man that's involved in this case?", and he pointed to William Pitkcavage, and then said: "Has he got any insurance?", and then he, Ponatoski, said: "I don't know," at which time Joseph Murin shook his head and walked away and there was no more said about it; that then the man said: "I am a fight promoter. I promote fights in Trevorton. I help people out in Mount Carmel"; that then he made some remarks that if he (defendant) did not have any insurance he would not like to see the man get railroaded and talked about prize fighting and then announced himself as being William J. Dooley, a fight promoter. Following the above conversation, another man stepped up to the

curb and Dooley accompanied him toward the court-house. Ponatoski testified that after waiting outside for several minutes they then went into the courthouse and when they went into the courtroom, he recognized Dooley as being one of the jury men, although at the time of the conversation, he did not know Dooley was on the jury.

William Pitkcavage, defendant, testified to substan-tially the same conversation as was related by Pona-toski and related that Dooley had asked Ponatoski whether he (Pitkcavage) was the man involved in the accident and upon a reply in the affirmative said: "Have you got any insurance?", and then said that he would not like to see defendant get railroaded.

Neither Ponatoski nor William Pitkcavage said any-thing to counsel for defendant when they arrived in the courtroom. Immediately after court convened on Tuesday morning, counsel for defendant proceeded to address the jury and immediately following his ad-dress, counsel for plaintiff addressed the jury and fol-lowing the close of the arguments of counsel, the court charged the jury. The explanation given by defend-ant, Pitkcavage, in not communicating the conver-sation to his counsel was that he did not have a chance to talk to his counsel prior to the addresses to the jury and he thought that the case was then closed.

Defendant testified that he discussed the remarks of Dooley on the way home to Joseph Murin and also men-tioned the matter at the fire station Tuesday night in the presence of the son of one, Miscavige, who is an in-surance man, and that on June 16th counsel for defend-ant interviewed the witnesses to the conversation and took their statements.

William J. Dooley, the juror, testified that he learned of the alleged conversation on Monday afternoon, June 19, 1950, when counsel for plaintiff notified him of the additional reasons for a new trial filed by defendant.

Dooley testified that he did not remember the conversation with Ponatoski and Pitkcavage. On cross-examination, when he was asked the question, "We are to understand you that you won't say you didn't talk to them, but you don't want to admit you did because you cannot remember?", Dooley replied: "That's right." The gist of the testimony of Dooley is that he cannot remember the conversation and he will not say that he did have a conversation with these men nor will he say that he did not have a conversation with them.

While the memory of man is sometimes fleeting, considering the short period of time which elapsed between the date of the alleged conversation and notice to the juror that he was accused of having such conversation, a period of six days, we can conclude that either the juror had an extremely unretentive memory or else he was deliberately evasive. In the light of the positive testimony given by defendant and Ponatoski as to the conversation, we can come to no other conclusion but that the conversation did take place on the morning of Tuesday, June 13, 1950.

At every recess during the trial of this case, the trial judge very specifically instructed the jury not to discuss the case among themselves and not to talk about it to any one or permit any one to talk about the case to them and if any such attempt was made, that the juror immediately report it to the court. These instructions were specifically given to the jury before the court adjourned late in the afternoon of June 12, 1950. Notwithstanding the instructions of the court, William J. Dooley did carry on a conversation concerning the case in the presence of defendant and two of his friends. These instructions were directed to the jury and not necessarily to the parties involved in the case except that the parties were informed by these instructions that the jury was not to be approached in any manner.

Plaintiff contends that it was the duty of defendant to promptly call the attention of his counsel to the conversation with the juror, Dooley, immediately before court convened. It was the duty of Pitkcavage to inform his attorney concerning this conversation. However, the trial judge clearly recollects that when the court convened on Tuesday morning, defendant's attorney came into the courtroom after court was declared open and immediately proceeded to address the jury, which gave no opportunity to defendant to relate the incident to his counsel unless he would have interrupted him as he proceeded before the jury. Immediately after the address of defendant's counsel, plaintiff's counsel addressed the jury and immediately thereafter the court charged the jury. Pitkcavage gave as a reason for not informing his counsel of the incident that he thought the case was over and that it was too late to mention the matter. Defendant, being a layman and not having any experience in the trial of cases, cannot and should not be charged with as high a degree of knowledge as those acquainted with court procedure. While it is true that as a general rule the misconduct of a juror must be made known at once or it may be treated as waived, this rule like other such rules, is open to exceptions in the interest of justice.

While a party cannot sit idly by and take his chances on a verdict by a jury after some alleged misconduct has come to his attention and then if the verdict is unfavorable rely upon the alleged misconduct as a reason for a new trial (Commonwealth v. Clay, 56 Pa. Superior Ct. 427), we are of the opinion that in this case, the trial having reached its final stages, defendant really did not have an opportunity to discuss the matter with his counsel, and being a layman unacquainted with court proceedings his apparent lack of diligence is excusable.

The more fundamental question which arises in this case is whether the conversation of the juror, Dooley, showed such prejudice or bias as would prevent the jury from rendering a just and fair verdict. The testimony taken before the court en banc clearly establishes that the juror did not intend to render a verdict based on the evidence and law applicable to the case, but on whether defendant carried liability insurance. A fair interpretation of the contents of the conversation can lead to no other conclusion but that the juror did not want to harm defendant personally but if he had liability insurance, then he would not be obliged to pay any verdict himself but the verdict would be paid by an insurance company. The juror was clearly basing his conclusion concerning a verdict in the case, not upon the evidence presented during the trial, but on the basis of extraneous circumstances, namely whether or not defendant was insured. This was not only contrary to his oath as a juror but was also contrary to the repeated instructions made by the trial judge. Neither plaintiff nor defendant was a moving actor in bringing about the present situation. Had the juror observed the instructions given to him, this situation would not have arisen. While the insurance company is not a party in this case, nevertheless, the courts have been zealous in keeping any information concerning the question of insurance out of a case of this type. The issue in the case was whether or not defendant was negligent and not whether or not he carried liability insurance.

While defendant has cited many cases which have applied the general rules concerning the treatment of the question at issue, such as a prompt disclosure of the alleged misconduct and consideration as to whether or not the remarks were prejudicial so as to prevent an impartial trial, nevertheless, these rules as to procedure must give way to the more fundamental and substantial rule that every litigant shall be afforded a fair

and impartial trial by jury and any misconduct on the part of jurors showing a prejudgment of the case, or tending to bring scandal on the administration of justice should operate to the granting of a new trial: Hostetler v. Kniseley, 322 Pa. 248.

It is difficult to state what effect the reasoning of the juror, Dooley, in respect to liability insurance may have had upon the other jurors in the case. The verdict was substantial and perhaps, excessive in light of the testimony. A fair and impartial trial in fact as well as in appearance is required to preserve the orderly administration of justice. There should not be even a suspicion of impartiality or wrongful conduct in the administration of justice and in the interest of preserving the guarantee of a fair and impartial trial by a fair and impartial jury, defendant's motion for a new trial on the ground of misconduct of a juror in the case must be granted.

We are reluctant to cause plaintiff any undue hardship in this matter for she has been entirely innocent of any misconduct. On the other hand, defendant has likewise been innocent of any misconduct and even though there is no evidence that Dooley actually persuaded the jury to decide the case upon whether or not there was liability insurance, nevertheless, by his own wrongful conduct and in complete violation of the instructions of the court he brought about a situation whereby the impartial administration of justice can only be preserved by the grant of a new trial. The fault lies entirely with the juror.

In Gross et al. v. Moore et al., 166 Pa. Superior Ct. 575, a juror was a niece of the adjuster for the insurance carrier of one of defendants. The adjuster talked to his niece during a recess and admittedly discussed family matters with her. Other jurors could observe the meeting. The adjuster was in the courtroom at least during a part of the trial, and he there openly con-

versed with counsel for one of defendants relative to this incident. The Superior Court, in reversing the lower court and granting a new trial held that the trial court should have had its attention called to the occurrence and that the adjuster's connection with and interest in the case must have been obvious to his niece and to the other jurors, and although there may have been no actual fraud or gross misbehavior on the part of any one in the case, on the facts set forth in the record and the additional facts admitted at the argument, a new trial will be granted. The Superior Court further held that a new trial is required to assure a fair and impartial trial in fact as well as in appearance, and to preserve the orderly administration of justice.

In the exercise of sound discretion, we are of the opinion that the conduct of the juror in this case was productive of prejudice and prevented a fair and impartial trial by a fair and impartial jury and a new trial must be granted.

Inasmuch as we have concluded to award a new trial on the basis of defendant's additional reason alleging the misconduct of the juror, William J. Dooley, in support of his motion for a new trial, it is unnecessary to consider the other reasons advanced by defendant in support of the motion.

### Order

And now, to wit, October 30, 1950, defendant's motion for a new trial is made absolute and it is hereby ordered and decreed that a new trial be awarded.