Bloomsburg Mills, Inc. *v.* Sordoni Construction
Co., Inc., Appellant.

Argued June 1, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Robert J. Doran,* with him *Joseph F. Flanagan,* and *John S. Fine,* for appellants.

*E. Eugene Eves,* with him *Smith and Eves,* for appellee.

OPINION BY MR. JUSTICE EAGEN, October 10, 1960:

The defendants, Lacy, Atherton, Wilson and Davis, registered architects and operating as a partnership, were engaged by the plaintiff corporation to design and prepare plans and specifications for, and supervise the construction of, a rayon and nylon weaving mill. The plans included the construction of a twenty-year bonded roof over the weaving mill. To meet the needs of its industrial purpose, this portion of the building was to be air conditioned to maintain therein a constant temperature of eighty degrees Fahrenheit and a constant, relatively high degree humidity of sixty per cent moisture. To help effectuate this, a built-up roof with a vapor seal was required, which would prevent leakage of moisture from the outside and condensation from the inside.

This action charges that the defendants negligently submitted plans for a roof which contained an improper vapor seal, faulty drain flushings, and fiberglas insulation material inadequate for the use intended, and that, as a result, the insulation material became saturated, soggy and inefficient within a short term of years, causing such high condensation on the inside ceiling of the building that the construction of a new and adequate roof became mandatory in order to carry on the weaving process. After trial, the jury returned a verdict for the plaintiff and from the entry of judgment thereon in the court below the defendants appeal.

It is charged that the evidence was insufficient to warrant a finding of negligence. With this, we must disagree.

In evaluating the motion for judgment n.o.v., the record, of course, must be read in the light most favorable to plaintiff's cause. This Court is not the trier of the facts: *Hostetler v. Kniseley,* 322 Pa. 248, 185 Atl. 300 (1936). Viewed in this light, there is ample evidence in the record to prove that the defendants were aware of the intended use of the building; that the problem of proper insulation was of paramount importance; that they recommended the use of insulating material which proved to be unsatisfactory; that this material would absorb and retain moisture, which fact was within their knowledge; that they made no previous tests of this material nor did they have any knowledge, specifically, of where it had been satisfactorily used for similar buildings; that they were aware that, unless the design and construction were such as to create and maintain a hermetically sealed envelope about the insulation material, moisture would infiltrate causing it to lose its insulating efficiency and function; that they did not specify in the plans that

such a complete envelope or enclosure be constructed; and, that in fact such was not done. All of these facts appearing in the record clearly constituted a basis for the fact-finding tribunal to conclude that negligence existed.

In addition, an expert witness testified that he had personal knowledge of the type of insulation material used in the construction of the roof involved; that it was inadequate for the purpose and not generally accepted, at that time, by the roofing industry. He further explained that there was no mechanical fastening of the cant strip on the roof as constructed, and that it merely floated on the insulation which was of a highly compressible nature; that there would be a tendency for the flashings along the parapet wall to tear and admit moisture into the insulation material; and, that the failure properly to fasten the metal flashings about the drain would cause looseness and leakage.

An architect is bound to perform with reasonable care the duties for which he contracts. His client has the right to regard him as skilled in the science of the construction of buildings, and to expect that he will use reasonable and ordinary care and diligence in the application of his professional knowledge to accomplish the purpose for which he is retained. While he does not guarantee a perfect plan or a satisfactory result, he does by his contract imply that he enjoys ordinary skill and ability in his profession and that he will exercise these attributes without neglect and with a certain exactness of performance to effectuate work properly done: *Henon v. Vernon*, 68 Pa. Superior Ct. 608 (1918); 6 C.J.S., Architects, §19 (1937). While an architect is not an absolute insurer of perfect plans, he is called upon to prepare plans and specifications which will give the structure so de-

signed reasonable fitness for its intended use, and he impliedly warrants their sufficiency for that purpose: *Hill v. Polar Pantries*, 219 S. C. 263, 64 S.E. 2d 885, 25 A.L.R. 2d 1080.

Whether or not the defendants fulfilled this responsibility and met the standards of professional ability and duty owed to plaintiff who engaged them in their professional capacity was for the jury under the proof submitted. Their asserted defenses that they originally intended to use foam-glass insulation rather than fiberglas but that the shortage of the former necessarily changed the plans—that they relied on the advertising of the manufacturer of the insulation material used—and, that the roof construction was carried through under the control of an independent contractor in accordance with the specifications of the manufacturer—were circumstances for the jury's consideration, but are definitely not conclusive. Also, the fact that a responsible officer of the plaintiff corporation approved the plans did not excuse the defendants from the exercise of ordinary and reasonable skill in providing plans that were adequate: *Simpson Bros. Corp. v. Merrimac Chemical Co.*, 248 Mass. 346, 142 N.E. 922 (1924).

Defendants also argue for a new trial. It is urged that the expert witness, referred to supra, was not properly qualified as such. This is without merit. For over forty years, this individual was employed by the Barrett Division of Allied Chemical and Dye Company, one of the largest roofing manufacturing companies in the United States, in the role of supervisor of sales and technical problems incident to built-up roofing. Following that employment, he became a professional consultant in the roofing business. When this particular roof was under contemplated construction, he was called upon for advice and counsel by his

employer, who had been requested to submit a bid by the defendants. Upon noting the intended use of the building, he turned down the request. With this background, the court committed no error in judging him qualified to speak on the matters related: See 1 Henry Pa. Evid. §§563, 570 (4th Ed. 1953).

The defendants also contend that the measure of damages as submitted to the jury was improper and that the amount of recovery given the plaintiff by the jury was speculative and not based upon proof in the record. This presents an unusual and difficult problem.

The original roof was constructed in the year 1947, bonded for twenty years' service and use, at a cost of $14,979. Installation of the new roof, construction of which began in October 1955, or approximately eight and one-half years later, cost $32,420. This included the cost of removing the old roof. No question is raised as to the reasonableness of these charges. The replacement was carried through upon the recommendation of the defendants. They, in fact, prepared the plans for the project.

The new roof included the use of foam-glass for insulation purposes. It was indicated in the testimony of defendant Lacy that this material was more expensive than the fiberglas material originally used. However, no definite proof of this fact was submitted, nor any specific evidence offered as to the differential in cost.

The trial judge in charging the jury specifically said that it should be noted that the plaintiff enjoyed the use of the old roof (guaranteed for twenty years) for a period of eight and one-half years and that plaintiff now enjoys a new roof of a better grade of construction. He charged that the defendants were consequently entitled to a credit but left the amount there-

of entirely to the wise discretion of the jury. No standards to be followed in arriving at the amount of this credit were specified. The jury awarded the plaintiff the sum of $18,645. The trial judge did not state whether, in arriving at the amount of credit to be given, the depreciation should be deducted from the cost of the original roof or that of the new roof. The jury, undoubtedly, subtracted the depreciation from the cost of the new roof and awarded the plaintiff approximately fifty-seven per cent of the total cost thereof.

It would appear to us that the jury's decision was intelligent, sensible and fair. The proper measure of damages was the cost of restoration: *Jones v. Monroe Elec. Co.,* 350 Pa. 539, 39 A. 2d 569 (1944). No instructions were requested to expand the now-alleged inadequacies of the charge. As pointed out in *Harman v. Chambers,* 358 Pa. 516, 522, 57 A. 2d 842 (1948): "Even where a charge is inadequate with respect to the elements of recoverable damage, the result of the sequential verdict may prove the error to have been legally harmless. . . ."

Defendants argue that an allowance should have been given, based upon the facts that the old roof was used for eight and one-half years and that better, more costly material was used in the construction of the new roof. The jury, undoubtedly, gave the depreciation allowance, but as to the allegedly more expensive material used in the erection of the new roof, no specific proof of increased costs was ever adduced. Defendants' failure to substantiate this contention was their own fault and cannot now be assigned as an error of the judge or jury.

It is also argued that measuring the damages in terms of costs in the year 1954, rather than in 1947, was error. The cases cited to sustain this argument

are factually inapposite. Why should the plaintiff be penalized because the costs of construction increased substantially over the period? The defendants' negligence caused the whole situation. The contention that, by the exercise of due care and diligence on the part of the plaintiff, the deficiencies would have been discovered in 1947, and replacement could then have been effectuated immediately at the then prevailing costs, is not convincing. The first leakage was discovered in 1949. Repairs were made by the roofing contractor who constructed the old roof. Everything then appeared to be satisfactory. In 1953, leakage about one drain was observed and repairs were again made. In 1954, substantial leakage was evident and was progressively getting worse. A conference of all interested parties resulted in a recommendation by the defendants that the roof be replaced. These facts, certainly, belie any carelessness on the part of the plaintiff in failing to act promptly.

The judgment is affirmed.

Mr. Justice BELL dissents.