**RHODE ISLAND TURNPIKE AND BRIDGE AUTHORITY**

v.

**BETHLEHEM STEEL CORPORATION et al.**

No. 79–181–Appeal.

Supreme Court of Rhode Island.

June 10, 1980.

Hogan & Hogan, Edward T. Hogan, Providence, Sheffield & Harvey, Brian G. Bardorf, Newport, for plaintiff.

Edwards & Angell, John V. Kean, Gail E. McCann, Providence, Hynes, Diamond & Reidy, Leslie A. Hynes, New York City, for defendants; Howard A. Feldman, Bethlehem, Pa., of counsel.

OPINION

KELLEHER, Justice.

Figuratively speaking, this appeal marks the second time we have crossed over the

Newport Bridge with our eyes fixed ever upward looking at the bridge's superstructure. The current dispute, in essence, involves the assessment of damages due the Rhode Island Turnpike and Bridge Authority (the Authority) for the failure of Bethlehem Steel Corporation (Bethlehem or the company) to prepare the surface of the bridge's steel work properly for painting when the steel was being processed sometime in the late 1960s at Bethlehem's Pottstown, Pennsylvania, plant. We made our initial figurative crossing in *Rhode Island Turnpike and Bridge Authority v. Bethlehem Steel Corp.*, R.I., 379 A.2d 344 (1977), amidst falling paint chips and as witnesses to what all the experts agreed was the most catastrophic paint failure in the bridge-building business. In that case, we affirmed the trial justice's factual finding that the Authority's loss was due to Bethlehem's failure to clean the steel surface to the specified degree, thereby leaving on the surface the contaminant mill scale which eventually caused the paint failure. We remanded the case to the Superior Court for a determination of a number of issues dealing with the cost of correcting Bethlehem's negligence.

During the interim between remand and the trial justice's consideration of the remand, the remedial steps were completed. Thus, as we begin our second excursion, the steel work has been completely recleaned and repainted. The sole question presently before us is the amount of credit due Bethlehem for the benefit the Authority received from the original paint job.

The trial justice, in making this computation, found that the original paint covering afforded some degree of protection to the bridge for three years. He also determined that the Authority had contracted for a paint job that should have lasted twelve years. Consequently, he concluded that Bethlehem deserved a credit of 25 percent of the amount of remedial painting cost. The trial justice also found that the Authority's remedial painting cost amounted to $5,512,158.04; from this sum he deducted the 25-percent credit of $1,378,039.51 and then ordered an entry of judgment in favor of the Authority for $4,134,188.53. Both Bethlehem and the Authority have taken appeals from the trial justice's approach to the credit calculation.

Bethlehem objects to the use of the 25-percent figure to calculate the amount of credit to which it is entitled. The company urges the adoption of a variable, rather than a fixed formula for computing the credit. In promoting this approach, Bethlehem notes that the remedial painting was done in stages. The first repainting occurred in 1971. Thereafter, the painters returned to the bridge spasmodically and did their chores in 1972, 1973, 1975, 1976, and finished the job in 1977. Everyone concedes that the starting point for determining the amount of any credit due Bethlehem is July 1, 1968.

Bethlehem's formula envisions the repainting project as beginning at the Newport end of the span in 1971 and proceeding in a westerly direction until the painters reached the Jamestown terminus of the bridge. Bethlehem concedes, for the purposes of establishing its formula, that the expected life of the original paint job is twelve years. Since the first phase of the repainting occurred in 1971, or three years after the July 1, 1968 target date, Bethlehem seeks a 25-percent credit on the remedial costs incurred by the Authority during 1971. Similarly, Bethlehem seeks a 33⅓-percent credit for the work done in 1972, a 41⅔-percent credit for the 1973 costs, a 58⅓-percent credit for the 1975 work, a 66⅔-percent credit for the 1976 job, and a 75-percent credit for the final phase of the repainting project.[1] This variable formula is based upon the supposition that since the

---

1. The 25-percent figure is calculated by dividing the number of years during which the paint replaced in 1971 was on the bridge by the expected life of the original paint, or ³/₁₂. Similarly, the 1972 figure of 33⅓ percent is derived by dividing the four years the paint replaced in 1972 was on the bridge by the expected life of the original paint, or ⁴/₁₂. The remaining percentages were computed in the same manner. Apparently, no remedial painting was conducted in 1974.

repainting occurred over a number of years, the Authority had the benefit of the original paint applied by Bethlehem for various portions of time depending upon the year the original paint was removed.

■ While we admire the company's ingenuity, the formula it endorses affords it a damage credit far in excess of that to which it is entitled. This result occurs because the formula credits Bethlehem for time beyond which the Authority received any benefit from the paint. In computing the credit, the essential time element is not the number of years that portions of the original coat of paint remained on the bridge, but rather the amount of time that Bethlehem's paint job as a whole served some useful function. This approach best serves the meaning of the term "credit." Bethlehem can only claim credit for that benefit which it has bestowed upon the Authority, that is, the useful life of the original paint.

Bethlehem cites the cases of *Allied Chemical Corp. v. Van Buren School Dist. No. 42*, 264 Ark. 810, 575 S.W.2d 445 (1979), *525 Main Street Corp. v. Eagle Roofing Co.*, 34 N.J. 251, 168 A.2d 33 (1961), *Bloomsburg Mills, Inc. v. Sordini Construction Co.*, 401 Pa. 358, 164 A.2d 201 (1960), in support of the proposition that credit should be based on the time of replacement rather than the time of failure. These cases dealt with leaking roofs that were repaired until further repairs became futile and roof replacement was in order. Credit for a defendant was calculated on the basis of the amount of time the plaintiff enjoyed the use of the roof, which was coincidentally also the time of replacement.

In such a large operation as repainting the Newport Bridge, the time of replacement cannot coincide with the time of failure. To permit Bethlehem credit for the extra time required to cure its contract breach would wrongfully allow the company to benefit from the fortuitous fact that it takes a lot of time to paint a 2½-mile-long bridge, buffeted by wind and waves, whose center span is 215 feet above the waters of Narragansett Bay, and whose two main towers reach skyward for an additional 185 feet.

■ Bethlehem's variable formula ranks second when measured against the trial justice's well-supported factual finding that the original paint job served no useful function after three years. At least five witnesses, one of whom described the original paint as "coming off in the breeze," testified that this paint provided no benefit to the bridge after 1971. Indeed, two witnesses were of the opinion that by 1971 the paint not only ceased to protect the bridge's steel structure but created an additional burden. In light of the record, we reject Bethlehem's formula.

■ In its cross-appeal the Authority claims that the trial justice erred in calculating the monetary value of Bethlehem's credit on the basis of the entire cost of the remedial paint job. Specifically, the Authority contends that this credit should only be applied to the actual cost of repainting, exclusive of the cost of sandblasting the surface of the steel work to receive the paint. We believe there is merit to this position. The exclusion of the cost of sandblasting from Bethlehem's credit would place the Authority in as good a position as it would have been had the contract been fully performed. 5 Corbin, *Contracts* § 992 (1964).

The Authority contracted both for steel work surface cleaned to the "(SSPC)6" level and for approximately twelve years of serviceable paint. Instead, it received a paint job of three years' duration owing to Bethlehem's failure to rid the steel surface of the contaminant called mill scale. Through the remedial work of the 1970s the bridge's steel, which was finally cleaned to the required specifications, was coated with a paint having a useful life of approximately twelve years. Thus, in total, the Authority received the specified steel surface and fifteen years' worth of paint. Since it bargained only for the specified surface and twelve years of paint, the Authority's windfall is three years of paint. Bethlehem is entirely responsible for the sandblasting expense, and its credit, in our opinion, must,

therefore, be limited to 25 percent of the cost of actually applying the paint to the bridge's surface.

The Authority claims that this court can make the necessary computations without the need of a remand; Bethlehem thinks otherwise. While this litigation has occupied the attention of Rhode Island's judiciary for what seems to be an extremely lengthy period of time, and even though we are wary of the possibility of a third cross-over, it is our belief that there may be factual issues requiring resolution in order to accurately calculate Bethlehem's credit. After remand, the trial justice may, if he deems it necessary, require the presentation by the litigants of additional evidence.

The Authority's appeal is sustained, Bethlehem's appeal is denied, the judgment appealed from is vacated, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

WEISBERGER and MURRAY, JJ., did not participate.