**FRIENDSHIP HEIGHTS ASSOCIATES**

v.

**VLASTIMIL KOUBEK, A.I.A., et al.**

**Civ. No. Y–82–2840.**

United States District Court,
D. Maryland.

Oct. 25, 1983.

Paul M. Vettori, Baltimore, Md., and Linda M. Richards, Baltimore, Md., for plaintiff.

Howard G. Goldberg, Baltimore, Md., and Danny B. O'Connor, Baltimore, Md., counsel for defendant Vlastimil Koubek.

Charles Yumkas, Baltimore, Md., and Thomas A. Baker, Baltimore, Md., for defendants Melrose Waterproofing Co. and United Pacific Ins. Co.

George D. Solter, and Jonathan E. Claiborne, Baltimore, Md., for defendant Tnemec Co., Inc.

Gerard W. Ittig, Washington, D.C., for defendant Ronald D. Mayhew, Inc.

## MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

The owner of a large condominium complex in Chevy Chase, Maryland, brought this diversity action against an architect, Vlastimil Koubek; a contractor, Melrose Waterproofing; a painter, Ronald D. Mayhew, Inc.; a paint manufacturer, Tnemec, Inc.; and the company which furnished the

performance bond for the painter and contractor. The lawsuit arose out of the repainting of concrete surfaces of the Willoughby, as the building was gussied up for its conversion to condominiums. Unfortunately for the owners of the building, the new coat of paint which had been applied to the building began to peel badly within three months of application, and the plaintiff now attempts to attribute fault for the deteriorating condition to at least one of the defendants. The goal of this litigation is to determine why the new coat of paint peeled off the building.

After a four-day trial to the bench, this goal remains unattained. Consequently, this Court finds for the defendants on the complaint, and for each of the cross-defendants in the myriad cross-claims that were filed by the defendants. Also, because there was a dearth of evidence or argument over the counterclaim of one of the parties against the plaintiff, the Court finds for the plaintiff on the counterclaim.

The plaintiff's strongest case was against the architect who prepared the specifications for the repainting of the building, Vlastimil Koubek, AIA. Therefore, the Court will begin its discussion denying relief against Koubek, and then proceed to discuss the liability of each of the other defendants.

KOUBEK

The plaintiff based its case against Koubek on tort and contract principles, claiming that Koubek's firm violated its duty as a professional, under a contract with the owners of the building, to perform adequately in specifying the procedure which should have been used in preparing the surface for the new coat of paint.

■ This Court must follow the choice of law rules of the forum state, *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), and the Maryland choice of law principle on the law governing contracts is that the law of the place of contracting governs matters of execution, interpretation and validity of the contract, but the law of the place of performance governs matters arising in connection with the performance of the contract. *Keco Industries, Inc. v. ACF Industries, Inc.*, 316 F.2d 513 (4th Cir.1963). Here, the contract was unquestionably to be performed in Maryland, the locus of the building which was repainted, and whether or not Koubek breached his duty is a matter related to the performance—rather than the interpretation—of the contract. Therefore, Maryland law applies in determining whether Koubek owed a duty and breached it.

■ While Maryland law applies, this Court has found no Maryland cases on architectural malpractice, nor have counsel cited any cases, on architectural malpractice—a claim which forms the gist of the plaintiff's action against Koubek. But *Crockett v. Crothers*, 264 Md. 222, 285 A.2d 612 (1972), shows that Maryland has adopted the nearly universal standard of the duty of care required of professionals (a duty to perform as a careful and prudent professional). In *Crockett*, that standard was applied to an engineer, whose skills and training are closely akin to those of an architect. Furthermore, courts generally apply this standard of care to architects:

> [A]n architect ... owes to the person employing him the duty to exercise his skill and ability, his judgment and taste, reasonably and without neglect. Annot., 25 A.L.R.2d 1085, 1087 (1952).

At least two of Maryland's neighboring states apply this standard in architectural malpractice cases. In *Seiler v. Levitz Furniture*, 367 A.2d 999, 1007 (Del.Super. 1976), the Delaware court cited the Pennsylvania standard on the duty of care owed by architects to their clients, a standard virtually identical to that cited above.

> An architect is bound to perform with reasonable care the duties for which he contracts. His client has the right to regard him as skilled in the science of the construction of buildings, and to expect he will use reasonable and ordinary care and diligence in the application of his professional knowledge to accomplish the purpose for which he is retained.

While he does not guarantee a perfect plan or a satisfactory result, he does by his contract imply that he enjoys ordinary skill and ability in his profession and that he will exercise these attributes without neglect and with a certain exactness of performance to effectuate work properly done [citing *Bloomsburg Mills, Inc. v. Sordoni Const. Co., Inc.*, 401 Pa. 358, 164 A.2d 201, 203 (1960)].

Therefore, it would appear that the Maryland standard to be applied in architectural malpractice cases is whether the architect performed with the skill and care of a reasonably prudent professional.

■ The plaintiff has made an arguable claim that Koubek's office violated this standard of care for the reasons to be discussed. However, to obtain relief, the plaintiff must also prove by a preponderance of the evidence that it suffered cognizable damages, and that Koubek's breach of duty was the proximate cause of its damages, since the duty of this Court, where a contract has been breached, is "to place the injured person, as far as possible by monetary award, in the position in which he would have been, if the contract had been properly performed." *Casualty Ins. Co. v. Messenger*, 181 Md. 295, 301–02, 29 A.2d 653 (1942). While it has been shown that the plaintiff suffered damages (the building will have to be repainted at a cost of about $500,000), the plaintiff has simply not proved that if the architect had performed as required, the paint would not have peeled. Nor has it shown why the paint peeled or that the architect would have been able to prevent it if he had performed properly.

The specifications for repainting the Willoughby were prepared by Charles Stover, an employee of Koubek's firm. The specifications called for wire-brushing the painted concrete which, according to testimony, removed loose paint, but not all the old paint. The specifications also required the contractor to dislodge debris and dust by scraping, brushing or blowing off the surface with high-pressure air. The plaintiff contended that the specifications should have called for water- or sand-blasting, to remove more, or all, of the paint, so that the new paint would have adhered to the concrete and would not have peeled. The plaintiff also argued that Stover's recommendations would have been different if he had performed the duties required of him under the professional standard of reasonable care.

Stover maintains that he took certain actions before preparing his specifications for repainting the Willoughby: visited the building as part of a walk-through of the building (several months before preparing the specifications, this walk-through was conducted as part of Koubek's preparation of reports filed in connection with the condominium conversion), determined that "Tnemecrete" was the previous paint applied to the building, consulted the literature of the manufacturer of Tnemecrete to determine the appropriate method of surface preparation in the reapplication of Tnemecrete, and consulted with a representative of Tnemec, manufacturer of Tnemecrete. The plaintiff suggests that Stover did *not* consult with the Tnemec representative before preparing the specifications—in fact plaintiff argues Stover did not consult the Tnemec representative until after the building had been repainted. Plaintiff also produced evidence that Stover was placed on notice that water-blasting should be required, when a painting contractor who planned to bid on the repainting job called Stover (Stover denied receiving that information). Plaintiff also claims that Stover violated his standard of care by not checking into why parts of the first coat of paint were peeling off the building, before preparing the specifications.

There was conflicting testimony about the timing of Stover's phone call to the Tnemec representative, Charles Ditsler. Stover insisted that his phone call, checking out the adequacy of the specifications, was made before he prepared the specifications—Ditsler testified that the phone call did not occur until after the repainting job had been completed. Having viewed the

witnesses, analyzed their testimony, and reviewed the other facts established in this case, this Court finds that Stover did not call Ditsler until after the repainting job was completed. Stover had far more incentive for his memory to be altered than did Ditsler, he proved evasive on a number of questions and appeared to have materially altered his testimony from his depositions on at least one subject (he earlier characterized the specifications as "outline specifications," but became argumentative when asked to do so at trial), and Ditsler seemed to have a good recall on relevant times, dates, and incidents. These factors lead the Court to find that the testimony of Ditsler was more credible than that of Stover on this issue.

The testimony also conflicted as to whether Stover was informed—after he had prepared the specifications but before the bids on the job had been accepted—that the old paint should be water- or sand-blasted off the building. A painting contractor, Eugene Bovello, testified that he had talked with the construction manager at the Willoughby and warned him, prophetically, that if the old paint was not completely removed, the new paint would peel. Bovello and the construction manager both testified that Bovello was then instructed to call Stover with the information. Bovello testified that he called Stover and asked for a clarification of one detail of the specifications, and mentioned, in the course of his conversation, that he would also submit a bid for water-blasting, and "that's the only way I could guarantee it." Stover said at the trial that he was not informed of Bovello's recommendation of water-blasting. Again, the Court finds Bovello's testimony more credible, and finds, as a matter of fact, that Bovello did indicate to Stover that water-blasting would be more appropriate than wire-brushing.

The remaining questions are whether Stover had a duty to do more than rely on his brief visual inspection of the building and consult the manufacturer's specifications, and whether Stover had a duty to change the specifications after receiving Bovello's warning. The testimony from the expert witnesses was conflicting. Not surprisingly, Koubek's expert said that nothing more needed to be done, while the two experts offered by the plaintiff and by Tnemec said that Stover should have done far more. Logic would seem to dictate that an architect, aware that old paint is peeling off concrete, would determine the cause of the peeling before writing specifications about surface preparation for repainting the building. But hindsight is 20/20, and the Court is satisfied the experts stacked up against Koubek would not have performed all the tests they suggested at trial, assuming that they knew only what Stover knew when he wrote the specifications.

The Court finds that the plaintiff has made a colorable claim of breach of duty, but stops short of deciding the issue, since the plaintiff is not entitled to relief on other grounds.

■ As mentioned, a plaintiff in an architectural malpractice case in Maryland needs to show not only a breach of duty by the architect and damages, but causation as well. In other words, the Court must attempt to put the plaintiff in as good a position as he would have occupied if the breach of duty had not occurred. And the plaintiff, to successfully seek relief for the damages which resulted, must show that those damages would not have occurred if the architect had performed according to the required standard of care. The plaintiff has failed completely to carry this burden. The testimony was unchallenged that the new paint adhered to the concrete wherever the first coat of paint had been removed, and all the chips of the newer paint showed that the second coat of paint had adhered to the first coat of paint. The inescapable conclusion is that something about the second coat of paint caused the remainder of the first coat of paint to peel off the building. The plaintiff failed to show why this occurred. And, more importantly, the plaintiff did not show that if Stover had performed the steps which it says should have been performed, the cause of the paint-peeling would have been

discovered and a different method of surface preparation would have been recommended. As mentioned above, an architect does not, by agreeing simply to perform work for a client, guarantee the ultimate results, only that he or she will perform with the requisite degree of care and skill.

Accordingly, the Court finds for defendant Koubek on the plaintiff's architectural malpractice claim, and on similar cross-claims.

### MELROSE, MAYHEW, AND UNITED PACIFIC

■ The plaintiff grounded its claim against Mayhew on allegations that the firm did not perform its work in a workmanlike manner. When asked at oral argument what grounds existed for maintaining this claim, the plaintiff mentioned that an inference could be drawn from the fact that the paint peeled off the building, and that, if the specifications were adequate, the work must have been performed inadequately for the paint to fail.

However, all the testimony presented in this case shows that the work was performed in an appropriate manner, with one exception: Harold K. Miller, president of the corporation which sold the Willoughby to Friendship Heights Association, said that he witnessed painting occurring when it was raining or soon after it had stopped raining (which was disallowed by the specifications). There is no testimony that the entire building was painted in the rain, even if some of that did occur, and since the paint is peeling off the entire building, it is unlikely that such a breach caused the paint to peel.

Therefore, the Court finds for the defendant Mayhew on the complaint and on all cross-claims, for Melrose (whose responsibility was only as the delegator of the duties involved in the repainting contract) and for United Pacific on the performance bond filed on the contract.

### TNEMEC

■ The remaining defendant is Tnemec. The plaintiff's cause of action against Tnemec is for breach of implied warranty of fitness for a particular purpose.

Under the Uniform Commercial Code, § 2–315, an implied warranty of fitness for a particular purpose is created under certain circumstances.

Where the seller at the time of contracting has reasons to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill of judgment to select or furnish suitable goods, there is, unless excluded or modified under the next section, an implied warranty that the goods shall be fit for such purpose.

The plaintiff maintains that reliance on the seller's expertise arose when Stover contacted the Tnemec representative, Ditsler, and requested approval of his specifications. However, this Court has already found that Ditsler was not contacted by Stover before the building was painted. Therefore, the only remaining source of information which could create an inference of an implied warranty of fitness would be the technical data sheets and advertising material which were widely distributed by Tnemec. Clearly, these materials were disseminated to a large number of individuals before Tnemec even knew that the Willoughby would be repainted, so it cannot be said that the "seller at the time of contracting ha[d] reasons to know any particular purpose" for which the plaintiff or its agents intended to use the paint.

Therefore, the Court finds for the defendant Tnemec on the complaint and on all cross-claims against it.

For the reasons set forth herein, it is this 25th day of October, 1983, by the United States District Court for the District of Maryland, ORDERED:

1. That judgment BE, and the same IS, hereby ENTERED in favor of the defendants;

2. That judgment BE, and the same IS, hereby ENTERED in favor of all cross-defendants on all cross-claims;

3. That judgment BE, and the same IS, hereby ENTERED in favor of the plaintiff

on the counterclaim asserted by defendant Melrose Waterproofing Company; and

4. That a copy of this Memorandum and Order be mailed to all counsel.