COUNCIL OF UNIT OWNERS OF SEA COLONY EAST, PHASE III CONDOMINIUM, on Behalf of the ASSOCIATION OF OWNERS, Plaintiff,

v.

CARL M. FREEMAN ASSOCIATES, INC., a Maryland Corporation, et al., Defendants.

ALCAN ALUMINUM CORPORATION, et al., Defendants and Third–Party Plaintiffs,

v.

ENAMEL PRODUCTS & PLATING COMPANY, et al., Third–Party Defendants.

Superior Court of Delaware, New Castle County.

Submitted: March 15, 1989.
Decided: April 11, 1989.

Edward M. McNally and Larry J. Tarabicos of Morris, James, Hitchens & Williams, Wilmington, and David Freishtat, Raymond D. Burke and W. Michael Mullen of Freishtat & Sandler, Baltimore, Md., for plaintiff.

C. Scott Reese of Cooch and Taylor, Wilmington, and Philip S. Downer and Shelah M. Fidellman of Hyatt & Rhoads, P.C., Washington, D.C., for Carl M. Freeman, defendants.

Mary E. Sherlock and Robert Young of Young & Sherlock, Wilmington, and Jeffrey P. Ward, Anthony Cillo and Neil F. Siegel of Alder, Cohen & Grigsby, P.C., Pittsburgh, Pa., for third-party defendant, Enamel Products & Plating Co.

Donald E. Evans of Bryde, Ament & Evans, Wilmington, and Robert B. Taylor of Adkins, Potts, & Smethurst, Salisbury, Md., for third-party defendant, Peninsula Roofing Co.

Lawrence S. Drexler of Elzufon & Associates, P.A., Wilmington, for defendant and third-party plaintiff Alcan Aluminum Corp.

Sherry Ruggiero of Tybout, Redfearn, Casarino & Pell, Wilmington, for third-party defendant, Salisbury Steel Products Corp.

## OPINION

MARTIN, Judge.

Plaintiff, Council of Unit Owners of Sea Colony East, Phase III Condominium has moved this Court for a motion in limine or, in the alternative, for judgment as a matter of law, to preclude the Freeman Defendants and any other party from introducing evidence at trial of any diminution of value and/or useful life theories as a means of reducing Plaintiff's damage award. The *Freeman* Defendants have filed a corresponding motion to establish the measure of damages in this tort and contract action. Third-party defendant Enamel Products & Plating Co. has filed a response to both Plaintiff's and Freeman Defendants' motions. Third-party defendant Peninsula Roofing has filed a response to Plaintiff's motion in limine. Defendant Alcan Aluminum has also filed an answering memorandum in response to the cross-motions. Third-party defendant Salisbury Steel Products Corporation adopts the arguments of the Freeman Defendants as well as Alcan Aluminum Corporation and Enamel Products and Plating Company. This is the Court's decision on said motions, said decision incorporating the responses filed by the aforementioned parties.

The "Freeman Defendants" include Carl M. Freeman Associates, Inc., Sea Colony Development Corporation, Inc., Sea Colony, Inc., and Sea Colony Management, Inc.

## DIMINUTION IN VALUE OR COST OF REPAIR

The Plaintiff has taken the position that the proper measure of damages under Delaware law is the full cost of repairs needed for Sea Colony East, Phase III Condominium, without any reduction or offset on either a diminution of value theory or useful life theory. Plaintiff argues that any measure of damages other than the full cost of repair will provide no true relief to Plaintiff and will in turn provide a substantial windfall to Freeman Defendants. The Freeman Defendants have argued that diminution or loss in value of the Phase III Condominiums is the appropriate measure of damages or in the alternative an adjusted cost of repair or replacement could be utilized, taking into account already expired useful lives of the Condominium and any increase in condominium value created by such repairs or replacements. Third-party defendant Enamel Product agrees with the Freeman Defendants that the proper measure of damages is the diminution in value theory and not cost of repair but argues in the alternative that if the cost of repair theory is adopted then as to Plaintiff's claims concerning roof panels, that theory should be appropriately supplemented by application of the useful life doctrine.

Peninsula Roofing takes the position that if damages are based on the replacement cost of the built up roofing system then such damages should be reduced on account of the useful life that Plaintiff has actually received or would have received if it had not replaced the roof. Alcan Aluminum adopts the Freeman Defendants' position that diminution of value is the appropriate measure, but if the Court adopts cost of repair theory, then the repair cost of the roof panels should be prorated by the expired useful life of the panels.

Sea Colony Phase III, also known as the Edgewater House, is a Fourteen (14) Story High-rise Building consisting of one hundred and seventy-seven (177) condominium units located immediately adjacent to the Atlantic Ocean in Bethany Beach, Delaware. The lobby and lower level of Edgewater House consists of offices, retail space, meeting rooms and recreational facilities. The remainder of the building consists of privately owned condominium units, many of which are rented during the peak summer season.

Edgewater House was constructed by defendant Sea Colony Development Corporation during 1974 and 1975. Sea Colony Development Corporation served as the general contractor and both it and Carl M. Freeman Associates, were involved in the design and construction of the building. Construction was substantially completed by May 21, 1975.

Defendant Sea Colony Management is the managing agent for Edgewater House and has managed the Councils financial affairs.

On February 17, 1989, Plaintiff filed its first amended complaint alleging defects in the roof, walls, concrete balconies and walkways, and sliding glass door interfacing of the Edgewater House, alleging the said defects are the result of the defendants' acts of omissions, said complaint raising a number of claims sounding in both contract and tort. The allegations relate to defective design, engineering, construction, materials, workmanship, operation, maintenance and repair involving the following common elements: flat roofing, metal roofing components, exterior wall panel system, the interface between the sliding doors and windows and the curtain wall, drainage concrete floor slabs, deteriorating concrete, re-bars in the concrete walkway and balconies, and ventilation shafts.

Plaintiff has estimated that the cost of completely repairing or replacing all of the allegedly defective building components at the Condominium is between $13 million and $15 million dollars. Through discovery, the Freeman Defendants' experts on damages have opined that there is no discernable difference or decrease in the properties appreciation attributable to the defects alleged by Plaintiff. In fact Defendants suggested that since 1975 the market value of units in the Condominium has appreciated at a rate equal to or better than comparable units in the market.

As indicated, both Plaintiff and Freeman Defendants have filed motions, in effect, requesting that the Court resolve these "measure of damages" questions prior to trial as matters of law. Furthermore, it appears that the "useful life" theory presents a question of first impression in Delaware. In addition, review of applicable precedents suggest that the application of the diminution in value theory may have some novelty as applied to this particular type of litigation.

For the purpose of establishing a damage theory for this litigation only, this Court accepts as true that Edgewater House is in need of between $13 million to $15 million dollars worth of repairs as outlined by Plaintiff's experts.

The Plaintiff has argued that the proper measure of damages is the "full cost of repairs" without any reduction or offset based on either diminution in value theory or useful life theory. Plaintiff asserts that cost of repair is the most widely accepted and generally applied measure of expectancy damages. See Hyatt and Downer: *Condominium and Homeowner Association Litigation:* Community Association Law, § 5.54, § 8.54 (1987). Under established principals of contract law, the "purpose of

money damages is to put the injured party in as good a position as that in which full performance would have put him in," Restatement (1st) of Contracts § 346B (1932), or to "give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed," Restatement (2nd) of Contracts § 347, a (1979). In establishing a damage theory, "regardless of whether the cause of action sounds in contract or tort, the focus is to identify the [injured parties] interests and to compensate for the damage done to them." D. Dobbs, *Handbook on the Law of Remedies* § 5.1, at 311 (1973).

The cost of repair rule and value rule are part of the alternative formula presented in the Restatement (1st) of Contracts, § 346 for damages for breach of a construction contract.[1]

A number of other Courts have addressed this question with differing results.[2]

The repair rule is "generally preferred" over the value rule. *Remedies* § 12.21, at 897. The cost of repairs normally will be awarded unless the repairs result in "un-

due loss or expenses ... an expenditure for reconstruction disproportionate to the end to be attained, or ... endangering unduly other parts of the building ..." C. McCormick *Handbook on the Law of Damages* § 168, at 647–48 (1935).

As stated in the *Restatement (2nd) of Contracts* § 348(2)(b), the reasonable cost of remedying the construction defects will be awarded unless that cost is "clearly disproportionate to the probable loss in value ...". Therefore Plaintiff asserts that it is entirely possible to make repairs that will correct problems or eliminate alleged design and construction defects to the Condominium for substantially less than the combined value of all of the individual condominium units. The Defendants accept the *Restatement* formulation of what the appropriate measure of damages in cases involving construction contracts should be, i.e. "diminution in the market price of the property ..." or "the reasonable cost of ... remedying the defects if that cost is not clearly disproportionate to the probable loss in value ...". The difference in approach is that the Defendants suggest that any diminution in market price that may result from alleged defects is a fraction of the estimated repair cost and therefore this

---

**1.** Section 346 provides that compensatory damages for defective construction may be either:

(i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste (repair rule); or

(ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste [value rule].

*Id.* at (1)(a)(i)–(ii).

**2.** The actual measure of damages varies among the states. *In a majority of states, damages are measured by the cost to complete the residence according to the contract and plans. This formula is used when completion is possible and the cost would not be so excessive as to constitute economic waste.* In cases in which completion according to the plans or correction of defects would be excessively costly, the court may award damages based on the difference between the residence as intended and as actually constructed. The same rule may apply if injury to real property is of a permanent nature. *Some courts may impose damages equal to the*

*cost of repair even if economic waste results and damages measured by the difference in value would be less.* Special damages may also be recoverable for unusual circumstances.

Some states follow a combination of the cost or repair and diminution of value rules or apply another measure, *whichever best compensates the plaintiff for the injuries or losses sustained.* For example, in Wyoming no specific rule for calculating damages is preferred over another, *because the primary objective is to determine the amount of loss, applying whatever rule is best suited for that purpose.* Michigan follows no fixed rule but recognizes that damages for injury to real property are generally measured by one of the two standards, diminution in value or reasonable cost of restoration or repair. Michigan employs a combination of the two standards depending on the extent of damage. If the damage cannot be repaired, the measure of damages is the difference between the market value of the property before and after the injury. *When the damage is repairable and the cost is less than the value of the property prior to the injury, the cost of repair is the proper measure.* Hyatt and Downer, *Condominium and Homeowner Association Litigation*, at § 5.54 (emphasis added).

disproportion requires application of the diminution in market price or loss of value approach. The Freeman Defendants suggest that Plaintiff's proposed repairs are replacement claims that constitute a virtual demolition and reconstruction of the entire exterior of the Condominium. It follows, according to these defendants, that the cost of repair or replacement is unreasonable and excessive in relation to any diminution in market price and therefore the diminution approach would be the appropriate measure of damages.

■ In recent construction defect cases, Delaware Courts have formulated the following rule, awarding damages: "if a party to a construction contract fails to perform its obligations under the contract, the aggrieved party is entitled to damages measured by the amount required to remedy the defective performance unless it is not reasonable or practical to do so." *Farny v. Bestfield Builders, Inc.*, Del.Super., 391 A.2d 212, at 214 (1978); *Carey v. McGinty*, Del.Super., C.A. No. 86C–JL–17, Chandler, Judge slip op. at 5, 1988 WL55336 (May 18, 1988). These cases adopt *Restatement* § 346 and state, in effect, "if the defect is remediable from the practical standpoint, recovery generally will be based on the market price completing or correcting the performance ..." See S. Williston, *Treatise on the Law of Contract* § 1363 at 344–345 (3rd Ed.1961). Furthermore, see *Tydings v. Loewenstein*, Del.Supr., 505 A.2d 443, at 447 (Del.Supr., 1986) wherein the Court extended the cost of repair theory to negligence claims. In *Young v. Joyce*, Del.Super., 351 A.2d 857 (1975), the Court held that the full cost of repairs was the appropriate measure of damages for a house purchaser whose action alleged fraud. These cases establish that under Delaware law the cost of repairs is the appropriate measure not only in tort cases but also in contract cases.

Clearly then the test is the reasonable cost of remedying the defects if that cost is not clearly disproportionate to the probable loss in value. The difference of course is that the Freeman Defendants argue that diminution or loss in value is the appropriate test since it would be a fraction of the $15 million dollars that Plaintiff alleges would be the cost of repairs. The Freeman Defendants argue further that the cost of repairs, as asserted by Plaintiff would constitute a virtual demolition and reconstruction of the exterior of the Condominium, thereby causing economic waste.

■ Where there is a tremendous disparity between restoration cost and the diminished value of the property, diminution in value may be an appropriate measure of damages. See *Brandywine 100 Corp. v. New Castle County*, Del.Supr., 527 A.2d 1241 (1987). In *Brandywine One Hundred* the evidence which the Supreme Court considered relevant in its affirmance of a trial court decision based on diminution in value was that the cost to restore buildings wrongfully demolished by the defendant was $287,719 and the diminished value of said property was only $30,600. The Supreme Court cited *Restatement* (2nd) Torts § 929(1)(a) which provided two alternative methods of determining damages similar to those stated in *Restatement* (2nd) of Contracts. Section 929(1)(a), which provides:

> The difference in value between the land before the harm and the value after the harm or at plaintiff's election in an appropriate case, cost of restoration that has been or may be reasonably incurred ...

*Brandywine 100 supra*, dealt with abandoned, heavily damaged structures having no intrinsic value other than aesthetics. Under the facts of this case, as developed in discovery, any appreciation in value of units at Edgewater House is due to substantial market forces in the relevant area and any comparison between such appraised value and any reduction due to alleged defects will be misleading at best.

Furthermore, the Freeman Defendants' expert, Gary Parker, in deposition testimony suggests that there will be no diminution in value until the cost of repair actually reflects itself in the market place. In fact, the evidence may show that there has been equal or greater appreciation of units at Edgewater House, as compared to com-

parables in the area, suggesting no diminution in value at all, notwithstanding what is assumed for this analysis, i.e., there is up to $13 million to $15 million in needed repairs.

For purposes of determining the measure of damages, tracking of sale prices paid by individual unit owners cannot be directly related to the need for correction of alleged defects and deficiencies. Moreover, there is evidence to suggest that, in the aggregate, the cost of repairs, on a per unit basis, are substantially less than the value of the units themselves. This factual context is also complicated by the fact that Plaintiff herein is the Council, which functions on behalf of all of the unit owners. The individual owners may realize a financial gain upon a sale of their investment in a condominium, while the Condominium Council itself will have to address any defects that are found to exist in the aggregate building, thereby charging the unit owners for repair. Therefore, for the purpose of establishing a measure of damages, it's plausible that the property value of the Condominium has diminished at least by the amount of repairs needed.

Finally, if repair cost is the appropriate measure, the Freeman Defendants suggest that it will have to be shown that the application of such will not result in economic waste. Economic waste exists when the repairs will result in "undue loss or expenses ... an expenditure for reconstruction disproportionate to the end to be obtained or endangering unduly other parts of the building ..." See *McCormick, supra,* 648. Even if consideration of "economic waste" was mandated in Delaware, on the current record-and in arguments in support thereof-economic waste has not been shown and therefore the value rule does not have to be applied.

Therefore it appears that the appropriate measure of damages will be the reasonable cost of remedying the defects, appropriately applied.

## APPLICATION OF USEFUL LIFE THEORY

The Freeman Defendants have argued that repair or replacement of allegedly defective building components at Edgewater House would give Plaintiff a windfall by extending the useful lives of those components beyond what was reasonably expectable at the time of construction. In effect then, as construed by Plaintiff, the Freeman Defendants are suggesting that some minimum cost to repair the building should be the appropriate measure and this concept is related to the buildings "useful life reasonably contemplated by the parties at the time of the purchase." Further it is suggested that any award of costs that would "extend" the life of the components of the building beyond their useful life would result in unjust enrichment to Plaintiff. Third-party defendant Salisbury Steel adopts this argument. Third-party defendant Enamel Products & Plating Co. joined the Freeman Defendants in this argument with application of the useful life doctrine especially as it is applied to the cost of roof panel repair. Similarly, third-party defendant Peninsula Roofing and defendant Alcan Aluminum assert that as to any damages based upon replacement of the built-up roofing, any award for repair must be reduced to reflect the useful life of the roofing that Plaintiff actually received or would have received if it had not replaced the roof. (According to documents filed in this case, the roof was replaced by Plaintiff in 1988).

The argument then is that repair or replacement cost, if used, should be pro-rated for the already-expired useful lives of the allegedly defective building components. For example, assume an element of construction had a useful life of 20 years and after 15 years it was found to have been defective and a defendant was required to restore it to its original value. Since 75% of the useful life would have expired, the replacement, assumed to have a 20 year useful life, would then provide that owner-plaintiff with a clear windfall, since the repair would entitle plaintiff to an additional 15 years of utility. The Defendants argue that fairness and equity dictate that if repair of this element is required, then that cost has to be pro-rated to reflect that

a plaintiff would have gotten the benefit of three quarters of the useful life of that particular component. Arguably, the "useful life" approach, is to put plaintiff in the position it would have been in without the breach and in turn to avoid giving plaintiff a windfall.[3]

Other decisions can be read to preclude plaintiffs from recovering amounts greater than what is necessary to make them whole. See, e.g., *Phillips v. Delaware Power and Light Company*, Del.Super. 201 A.2d 160 (1964) *Oliver B. Cannon and Son, Inc. v. Dorr–Oliver, Incorporated*, 394 A.2d 1160 (Del.Super.1978); *Katz v. Executive Auto Leasing, Inc.*, Del.Super., 282 A.2d 866 (1971).

Authority in this jurisdiction suggest that a Delaware Court has discretion to employ a flexible approach to damages in order to achieve a just and reasonable result. *Farny, supra*, at 213–14. *Accord, Tydings, supra.* Some courts have expressly approved and applied the useful life concept to prorate plaintiffs' damages for building defects and construction contract cases where plaintiffs have enjoyed substantial periods of use of the defective components prior to replacing them.[4] Defendants suggest that application of the useful life doctrine may be particularly appropriate here where the plaintiff is a condominium association.[5]

This Court has decided that the case, *sub judice*, is not appropriate for implementation of the "useful life" theory as a measure of damages. Although its initial appeal is in preventing a windfall for Plaintiff, a result the Court is sensitive to, its utilization here, as an adjunct to the measure of damages, has the potential of giving the Defendants too much of a benefit. This is especially true when applied to tort claims, where damages, if awarded, should be to make a plaintiff whole. Furthermore, utilization of this theory, in this matter, involving claims to exterior walls, concrete, roof and interfacing, has the potential to create significant proof problems and substantial jury confusion.

The only Delaware case cited by the Freeman Defendants, supporting the useful life theory, can be distinguished on its facts. *Phillips, supra*, addressed a discovery question concerning a house damaged by an explosion and subsequent fire. Phillips did not involve allegations of serious design and construction problems in major components of a multi-unit residential condominium. Although this Court is aware of the teaching of authority of cases such as *Bloomburg, supra*, and *Allied Chemical, supra*, the instant matter involves much more than claims about a defective roof.

3. *Community Television Services, Inc. v. Dresser Industries, Inc.*, 435 F.Supp. 214 (S.D.So.Dakota 1977); *State Property & Buildings Commission v. H.W. Miller Construction Company, Inc.*, 385 S.W.2d 211 (Ky.1964); *Whitman Hotel Corp. v. Elliott & Watrous Engineering Co.*, 137 Conn. 562, 79 A.2d 591 (1951).

4. *Bloomburg Mills, Inc. v. Sordoni Construction Co., Inc.*, 401 Pa. 358, 164 A.2d 201 (1960); *Allied Chemical Corp. v. Van Buren School District*, 264 Ark. 810, 575 S.W.2d 445 (1979); *525 Main Street Corporation v. Eagle Roofing Co., Inc.*, 34 N.J. 251, 168 A.2d 33 (1961).

5. Defendants argue that proration of damages based on expired useful life may be appropriate in the present case where Plaintiff is a condominium association. A condominium normally maintains reserve funds which are gradually built up based on a replacement schedule so that when building components can be expected to need replacing, the necessary funds for replacement are available. In the present case, Plaintiff's Code of Regulations requires Plaintiff to "build up and maintain reasonable reserves for working capital, operations, contingencies and replacements." Code of Regulations of Sea Colony Phase III Condominium, Article V, Section 1(d). Reserve funding schedules are based on expected useful lives of the building's components. Thus, for example, three-quarters of the cost of replacing the roof should be in the reserve fund when a roof with a twenty-year useful life is fifteen years old. If, at that time, the roof is found to be defective and is replaced with a new roof whose useful life is twenty years, the condominium will receive fifteen years of roof life unless it contributes its reserves to the replacement of the roof. It is suggested that the appropriateness of applying useful life to a condominium is clearer than it might be for a different type of plaintiff, because the condominium's financial management of its physical plant is or should be founded essentially on useful life principles.

As to invocation of *Restatement of Torts, 2nd, Section 920,* as suggested by Peninsula Roofing, concerning appropriateness of the useful life concept in a tort context, this court is not convinced even by the examples included therein, that such an approach is applicable to facts such as are alleged here.

In developing a measure of damages for the tort and contract claims included in this case, it is assumed that a claimant will have to show the reasonableness of any repair or replacement estimates or requests for reimbursement for funds spent.

Also for purposes of determining a measure of damages, this Court accepts that there are significant allegations that Plaintiff did not have full use and enjoyment of the referenced components even for what is alleged to be their useful life. Conceptually there would be some attraction in giving a defendant the benefit of having provided a component that performed properly until it had to be replaced. Of course, if this were the case there would be no need for repair or replacement of the component. Assuming then that a plaintiff did not get the benefit of his bargain, and there is a need for replacement or repair of a component and a defendant is entitled to some "mitigation" for "useful life", then the plaintiff should also receive an "offset" for the diminished use of the defective component during its "not-so-useful life". Although qualitatively attractive as an approach, the quantification of such diminished use, along with assessment of useful lives of components such as those pertinent to this case, as a proof problem, is simply overwhelming. A telephone pole hit by a car has a specific, identifiable period of useful service which is readily determined by looking at the number of years it performed prior to being damaged. Building components, alleged to have been defective early in their respective lives are not amenable to such easy and straightforward characterization.

For all of the foregoing reasons, this Court denies the Freeman Defendant's Motion to Establish the Measure of Damages and grants Plaintiff's Motion in Limine,

which establishes as a measure of damages, the "cost of repair".

IT IS SO ORDERED