MEMORANDUM OPINION AND ORDER
 

 BUCKLO, District Judge.
 

 Chemical Waste Management, Inc. (“Chem-Waste”) has brought suit against the “Former Shareholders” of Diversified Scientific Services, Inc. (“DSSI”) for breach of contract. The Former Shareholders have moved for summary judgment or, in the alternative, partial summary judgment. For the reasons stated below, their motion is denied.
 

 Background
 

 DSSI operates a plant treating liquid scintillation materials in Kingston, Tennessee (“the Facility”). New companies possess the technical capability and government permits necessary to process this “mixed liquid waste,” which is frequently radioactive and hazardous, and because there is a lengthy application process to obtain the appropriate permits, entering the field requires a considerable investment of time and resources. Chem-Waste wanted to capture part of this potentially lucrative market, and so in 1991 it signed an agreement with the Former Shareholders to purchase all of DSSI’s outstanding stock from them (“the Stock Purchase Agreement”). In exchange for the DSSI stock, Chem-Waste paid the Former Shareholders approximately $4.5 million in cash and executed a promissory note for $650,000. Chem-Waste says that it also provided additional consideration for the stock by assuming various debts of DSSI, which amounted to nearly $3.5 million, but the Former Shareholders maintain that Chem-Waste was not obligated to assume those debts under the Stock Purchase Agreement.
 

 
 *601
 
 In the Stock Purchase Agreement, the Former Shareholders provided various warranties related to the Facility’s physical condition and DSSI’s compliance with environmental regulations, and agreed to indemnify Chem-Waste in the event of any breach of those warranties.
 
 [1]
 
 Chem-Waste alleges that those warranties were breached and consequently it has had to spend $11 million to repair the Facility. Chem-Waste has brought this suit against the Former Shareholders for breach of contract seeking to recover those repair costs.
 
 [2]
 
 The Former Shareholders have now moved for summary judgment, arguing that Chem-Waste cannot recover those repairs costs as damages.
 

 The court may award summary judgment to the moving party only when there is no genuine issue of material fact and that party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when a reasonable jury could return a verdict for the non-movant.
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering the motion, all reasonable inferences must be drawn in favor of the non-moving party.
 
 Adickes v. S.H. Kress & Co.,
 
 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).
 

 Damages
 

 The Former Shareholders first argue that they are entitled to summary judgment because Chem-Waste cannot prove any damages for which it may legally recover. The Former Shareholders ask me to analogize Chem-Waste’s suit for breach of contract to eases in which plaintiffs have sued for securities fraud, because Chem-Waste purchased DSSI stock. In suits for securities fraud, the plaintiff may only recover the difference between the price of the stock and its actual value if the truth were known.
 
 See, e.g., Pommer v. Medtest Corp.,
 
 961 F.2d 620, 628 (7th Cir.1992). The Former Shareholders argue that Chem-Waste should also be so limited. Because Chem-Waste has not alleged that the value of its DSSI stock has fallen or brought forth any evidence of a diminution in value of the stock, the Former Shareholders argue that Chem-Waste has no recoverable damages.
 

 Chem-Waste responds by arguing that this case is not analogous to securities fraud eases because this suit is for breach of contract. It says that the mere fact that the transaction underlying this case involves the sale of stock does not transform this suit into one for securities fraud. Chem-Waste notes that unlike the defendants in securities fraud cases, the Former Shareholders agreed to indemnify Chem-Waste if certain warranties were breached. Chem-Waste argues that it should therefore not be bound by the securities fraud measure of damages.
 

 Both sides point to
 
 Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.,
 
 910 F.2d 1540 (7th Cir.1990), in support of their argument. In
 
 Astor,
 
 the plaintiff purchased all the outstanding stock in a limousine company and subsequently sued the former shareholders for securities fraud. The plaintiff sought damages for the diminution in value of the stock and for lost profits, but the Seventh Circuit held that because the suit was for securities fraud the plaintiff could only recover the diminution in value of the stock. According to the Seventh Circuit, the plaintiff could not recover lost profits because “[the plaintiff] cast this as a securities transaction, and it gets the securities measure of damages.”
 
 Id.
 
 at 1552. The Former Shareholders argue that because the parties structured the acquisition of DSSI as a stock purchase, Chem-Waste is similarly limited. Chem-Waste responds that the court in
 
 Astor
 
 ruled the way it did, not because the underlying transaction was a
 
 *602
 
 stock purchase, but because the plaintiff in
 
 Astor
 
 chose to file suit under Rule 10b-5 in order to get into federal court.
 

 I agree with Chem-Waste that
 
 Astor
 
 does not control in this case. In Astor, the court focused on the fact that the plaintiff had used the characterization of the transaction as a stock purchase “as entrée to federal court,” and refused to allow the plaintiff to recharacterize the transaction as an asset purchase to claim additional damages.
 
 Id.
 
 The court stated that “[o]ne characterization of the transaction is plenty, and [the plaintiff] must take the bitter with the sweet.”
 
 Id.
 
 In contrast, here Chem-Waste chose, from the beginning, to characterize its contract with the Former Shareholders as one for the sale of property (albeit stock) and file suit for breach of contract.
 
 [3]
 
 Thus
 
 Astor
 
 does not dictate that I limit Chem-Waste’s damages exclusively to those damages available in a securities fraud suit.
 

 In Delaware,
 
 [4]
 
 a plaintiff suing for breach of contract generally may recover “what is necessary to put it in as good a position as it would have occupied had there been full performance of the contract.”
 
 American General Corp. v. Continental Airlines Corp.,
 
 622 A.2d 1, 8 (Del.Ch.),
 
 ajfd,
 
 620 A.2d 856 (Del. 1992). Thus Chem-Waste is not limited to recovering only the diminution in value of the DSSI stock, and so the Former Shareholders are not entitled to summary judgment.
 
 [5]
 

 The Former Shareholders alternatively argue that the damages Chem-Waste seeks are limited by the doctrine of economic waste. As an initial matter, I note that the Former Shareholders do not explain how partial summary judgment would be procedurally appropriate in this case with respect to the issue of damages. Summary judgment may be granted only for claims, not issues.
 
 See, e.g., Ambre v. Joe Madden Ford,
 
 881 F.Supp. 1187, 1193 (N.D.Ill.1995) (“[A]n order granting summary judgment must dispose of an entire claim as opposed to a single portion of the claim.”) (citing
 
 Commonwealth Ins. Co. of N.Y. v. O. Henry Tent & Awning Co.,
 
 266 F.2d 200, 201 (7th Cir.1959)). Because the parties have briefed the issued, however, I will treat the request for partial summary judgment as a motion
 
 in limine
 
 and consider whether, as a matter of law, Chem-Waste’s damages should be capped.
 

 The Former Shareholders argue that because Chem-Waste paid only $5.1 million for DSSI stock, it should not have spent (and should not be allowed to recover) $11 million in repair costs. They-say that spending $11 million to repair the Facility constitutes economic waste because that amount is disproportionate to the diminution in value of the Facility. Delaware courts appear to recognize two separate principles which may indeed limit Chem-Waste’s damages. First, Delaware courts allow plaintiffs in breach of warranty cases to recover the “reasonable cost of remedying the defects if that cost is not clearly disproportionate to the probable loss in value.”
 
 Council of Unit Owners of Sea Colony East v. Carl M. Freeman Associates, Inc.,
 
 564 A.2d 357, 361 (Del.Super.Ct.1989) (applying Restatement (Second) of Contracts § 348(2)(b) (1981)).
 

 Second, Delaware courts may award only the diminution in value when the cost to repair the asset constitutes economic waste.
 
 Shipman v. Hudson,
 
 No. CIV. A. 88C-JN32, 1995 WL 109009, at *5 (Del.Super.Ct.1995). “Economic waste exists when the repairs will result in ‘undue loss or expenses ... an expenditure for reconstruction disproportionate to the end to be obtained.’ ”
 
 Council of
 
 
 *603
 

 Unit Owners,
 
 564 A.2d at 362 (citing Charles T. McCormick, Handbook on the Law of Damages § 168 at 648 (1st ed.1935)). The brief from the Former Shareholders does not distinguish these two potential limits on Chem-Waste’s damages, but refers to them both simply as economic waste. Because both principles rest on the same analysis (comparing the diminution in value of the Facility to the amount required to repair it), to resolve this motion I need not distinguish between the two doctrines either.
 

 The first question to consider is whether the doctrine of economic waste applies to this ease. Several factors limit the usefulness of the doctrine of economic waste here. First, the Former Shareholders support their argument with two Delaware cases, both of which involved construction defects.
 
 [6]
 
 As Chem-Waste points out, this ease is not about a simple construction defect in a building, but about warranties regarding environmental compliance for a highly specialized physical plant. Generally, economic waste precludes awarding the cost to repair an asset where the cost of obtaining a replacement would prove less expensive. For example, it makes little sense to fix a $4,000 car crushed in an accident if repairing the car would cost $10,000. Because it is more efficient to purchase a similar car for $4,000, the court would award only $4,000 in damages to the plaintiff.
 
 See Zazu Designs v. L’Oreal,
 
 979 F.2d 499, 506 (7th Cir.1992) (using this example to show that “[e]xpenses for repair cannot be justified when they exceed the value of the asset”). The economic waste doctrine, however, rests on the assumption that it is possible to replace the asset rather than repair it. Here, unlike the buyer of a new car, it is not clear that Chem-Waste could simply abandon DSSI in favor of another company because so few companies have the equipment and government permits necessary to process liquid scintillation materials.
 
 [7]
 

 Additionally, Chem-Waste claims that the repairs were reasonable because the repairs were made in stages over a period of “several years” as Chem-Waste gradually discovered the defects in the Facility. While a single decision to spend $11 million to repair the Facility should perhaps be judged for its economic sense, a series of separate decisions to spend a total of $11 million to repair the Facility should not necessarily be subject to a similar scrutiny. I agree with Chem-Waste that these factors may weigh against applying the economic waste doctrine here. In denying the Former Shareholders’ motion, however, I do not hold that a jury would not be entitled to limit the damages sought by Chem-Waste if the repair costs were unreasonable — with this opinion I hold only that I cannot, as a matter of law, say that Chem-Waste is not entitled to recover its repair costs.
 

 [1]
 

 . The Stock Purchase Agreement provides that the Former Shareholders "will defend, indemnify and hold [Chem-Waste] and [DSSI] harmless in respect of the aggregate of all ... expenses, losses, costs, deficiencies, liabilities and damages (including related counsel fees and expenses) incurred or suffered by [Chem-Waste]: (i) resulting from any inaccurate representation or warranty made by the [Former Shareholders] in or pursuant to this Agreement, or (ii) resulting from any default in the performance of any of the covenants or the agreements made by the [Former Shareholders] in this Agreement."
 

 [2]
 

 . The parties do not say whether Chem-Waste requested reimbursement from the Former Shareholders before bringing this suit.
 

 [3]
 

 . My jurisdiction in this case is based on the parties' diversity of citizenship.
 

 [4]
 

 . The Stock Purchase Agreement provides that Delaware law governs enforcement of the contract.
 

 [5]
 

 . Even if
 
 Astor
 
 was applicable to this case, it is not clear that summary judgment would be appropriate. Under the standard for measuring damages in securities fraud suits, Chem-Waste could recover "the difference between what [Chem-Waste] paid for the [DSSI] stock and what it was worth.”
 
 Astor,
 
 910 F.2d at 1551. The Former Shareholders have argued only that Chem-Waste cannot prove that the value of the DSSI stock has not fallen,
 
 i.e.
 
 it is not
 
 now
 
 worth any less. That fact does not necessarily mean that Chem-Waste did not pay too much for the DSSI stock in the first place, because Chem-Waste says it has spent millions of dollars improving the Facilily, presumably increasing the value of the DSSI stock.
 

 [6]
 

 . In one of these cases,
 
 Council of Unit Owners,
 
 the court did not even hold that the economic waste doctrine necessarily applied in Delaware, but said only that "[e]ven if consideration of 'economic waste’ was mandated in Delaware,” the defendants had not shown it limited the plaintiff’s damages in that case.
 
 Council of Unit Owners of Sea Colony East v. Carl M. Freeman Associates, Inc.,
 
 564 A.2d 357, 362 (Del.Super.Ct.1989).
 

 [7]
 

 . Chem-Waste also could not enter this field itself without completing the costly and time-consuming permit application process.